**SO ORDERED.**

**SIGNED this 8th day of May, 2014.**





Robert E. Nugent
United States Chief Bankruptcy Judge

_____

**DESIGNATED FOR ONLINE PUBLICATION ONLY**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

IN RE:                                                    )
                                                          )
**LIPTON JOSEPH RIVET, JR.,**          )   Case No. 13-11726
                                                          )   Chapter 13
                    Debtor.                     )
_____)

## ORDER DENYING CONFIRMATION

When a home mortgage is set over to a debtor before he files for chapter 13 relief, the nature and treatment of the debtor's obligation to the non-debtor spouse to pay the debt depends on the whether that obligation is in the nature of support or property settlement. Bankruptcy courts examine the respective financial situations of the parties at the time of their divorce to determine if they or the domestic court intended the payment of the home mortgage to be support or part of a property settlement. In this case, at the time of the divorce, the debtor's earnings far exceeded

1

those of his wife. She retained custody of their minor children and received some child support, but she received no direct spousal support or maintenance. The debtor alone was liable on the second mortgage. The circumstances cause me to conclude that the debtor's obligation to pay the second mortgage was in the nature of support and is a domestic support obligation that must be treated as a priority claim in the case and cannot be avoided or discharged in bankruptcy. The debtor's plan doesn't provide for that treatment and therefore cannot be confirmed.

*Facts*

Cynthia and Lipton J. Rivet, Jr. were married in 1992 and had two children. They were divorced in the Chancery Court of Lamar County, Mississippi. The Chancellor signed their divorce decree on May 3, 2011 and entered the order on the court's docket on August 26, 2011. At that time, their sons were 13 and 17. The divorce decree recognizes and approves a Child Custody, Child Support, and Property Settlement Agreement the parties signed in June of 2010.[1] Both parties were represented by counsel. They agreed that Ms. Rivet would have custody of the two children, that Mr. Rivet would pay child support that included an arrearage and a monthly payment of $600, and that Mr. Rivet would have certain visitation rights. The court set the marital homestead in Sumrall, Mississippi over to Ms. Rivet – Mr. Rivet was to deliver a quitclaim deed – and she, in turn, agreed to pay the jointly incurred Bank of America (BOA) first mortgage loan on the property, a debt that amounts to

---

[1] Ex. B.

2

over $80,000. He was ordered to pay BOA's second mortgage, upon which only he is personally liable, which has a current balance of $33,299.[2] Each party was to pay their own unsecured debts and indemnify the other from those debts. The parties expressly waived the payment of alimony.

Mr. Rivet testified that he took out the second mortgage loan in August of 2007 to consolidate some unsecured debts that included a note on a four-wheeler, medical expenses, and credit card balances.[3] He and Ms. Rivet separated in October of 2008 and he moved to Oberlin, Kansas to take a job there. She remained with the children in Mississippi and worked as a school bus attendant part time. The couple attempted to reconcile in 2009, but couldn't, and divorced thereafter.

At the time of their divorce, Mr. Rivet was employed as a journeyman lineman. According to his tax transcripts and returns, he earned $72,629 in 2008, $55,604 in 2009 and $61,895 in 2010.[4] The parties' 2008 joint return indicates total wages of $79,048, suggesting that Ms. Rivet's income that year was $6,419.[5] Her 2009 individual return reflects wages of $9,293 and her 2010 return shows $9,454.[6] Ms. Rivet received child support from Mr. Rivet in varying amounts. Ms. Rivet remarried in 2013 and is now known as Cynthia Knight. Counsel advise that Mississippi law obligates a

---

[2] Ex. A.

[3] *Id.*

[4] Exhs. C, D and E.

[5] $79,048-$72,629=$6,419. *See* Ex. 1.

[6] Exhs. 2 and 3.

3

divorced spouse to maintain child support obligations until the supported children are emancipated.[7]

Mr. Rivet filed this bankruptcy case on July 8, 2013 and proposed a chapter 13 plan that provided for 36 payments of $200.[8] The scheduled payment on the second mortgage debt is $307 per month. Rivet testified that he is some 15 months in arrears on that debt. His plan makes no provision either to make the monthly payment or to pay Cynthia Knight enough that she could service the debt herself. He amended the plan in July of 2013 to propose the surrender of his interest in the home in Sumrall and declare his obligation to her to pay the second mortgage an unsecured claim to be discharged upon completion of his plan payments.[9]

Both Ms. Knight and the Trustee have objected to confirmation.[10] The Trustee questions whether the debtor has proposed to pay his disposable income into the plan while Ms. Knight claims that the debtor's obligation to her to pay the second mortgage is a domestic support obligation and that Mr. Rivet has failed to disclose his income and that of his cohabitant partner or fiancee. I conducted a confirmation hearing on

---

[7] MISS. CODE ANN. § 93-11-65(8)(a)(i) (Duty of support terminates upon emancipation of the child which occurs when the child turns 21, marries, joins the military full time, or is incarcerated for a felony for more than two years).

[8] Dkt. 2.

[9] Ex. F.

[10] Dkt. 20, amended by dkt. 31 (Knight) and dkt. 16, amended by dkt. 33 (Trustee).

4

March 18, 2014.[11]

*Analysis*

Ms. Knight is not personally liable for the second mortgage loan, but if Mr. Rivet does not pay it, BOA will have a right to foreclose on her home. I must determine whether the divorce court's order obligating Mr. Rivet pay his debt that is secured by the debtor's former spouse's home is a nondischargeable domestic support order under § 523(a)(5) that is entitled to priority under § 507(b)(1) or whether it is a property settlement obligation under § 523(a)(15) that would be dischargeable under § 1328(a) and treated as a general unsecured claim.[12]

We begin with § 101(14A) which defines a domestic support obligation (DSO) as one that accrues pre-petition, is owed to a former spouse, and is in the nature of alimony, maintenance or support "without regard to whether such debt is expressly so designated," and was established before the bankruptcy case was filed by a court order or settlement agreement. The fact the debt is not directly payable to the former spouse does not disqualify it from being a DSO.[13]

---

[11] The Court has subject matter jurisdiction over this contested, core matter. *See* 28 U.S.C. § 157(b)(1) and (2)(L) and § 1334. The debtor in appeared in person and by his counsel, David Lund. Cynthia Knight did not appear, but was represented by Elizabeth Carson. The Chapter 13 Trustee appeared by Karin Amyx.

[12] I have previously addressed a similar issue *in In re Bright*, No. 11-10214, 2012 WL 346643 (Bankr. D. Kan. Feb. 1, 2012). There, the debtor and his former spouse were jointly obligated on the disputed mortgage loan.

[13] *See Lewis v. Trump (In re Trump)*, 309 B.R. 585 (Bankr.D.Kan.2004) (Debtor's obligation to make second mortgage note payments to the second mortgagee, a third party, did not prohibit court from finding the debt nondischargeable under § 523(a)(5), citing *In re Miller*, 55 F.3d 1487 (10th Cir.1995).); *Jones v. Jones (In re Jones)*, 9 F.3d 878 (10th

5

A DSO is generally excepted from discharge by § 523(a)(5). That exception is incorporated as an exception to a chapter 13 debtor's discharge by §§ 1328(a) and (b). Marital obligations that are not DSO are also generally excepted from discharge by § 523(a)(15), but this exception does not apply to a § 1328(a) "full" chapter 13 discharge. A DSO is also treated as a first priority claim under § 507(a)(1) and must be paid in full during a chapter 13 plan's duration under § 1322(a)(2).

Bankruptcy courts employ the same analysis whether they are determining if a debt is a DSO for nondischargeability or priority treatment purposes.[14] They are required to independently examine whether a matrimonial obligation is support or property division.[15] Our courts look within the four corners of the decree and consider the respective financial circumstances of the parties at the time of the divorce in an effort to determine the intent of the parties (or the state court) at the time of the decree concerning whether the payments were for support or property division.[16] The

---

Cir.1993) (Emphasis should be placed on the determination of whether a debt is in the nature of support, rather than on the identity of the payee.); *In re Miller,* 284 B.R. 734 (10th Cir. B.A.P. 2002) (nature of debt owed and not identity of payee that governs whether debt is support within the meaning of priority provision, § 507(a)); *In re Palmieri*, 2011 WL 6812336 at *5 (Bankr.E.D.Mich. Nov. 21, 2011) (chapter 13 case).

[14] *In re Krueger,* 457 B.R. 465, 474 (Bankr. D. S.C. 2011); *In re Boller,* 393 B.R. 569, 574 (Bankr. E.D. Tenn. 2008); *In re Miller,* 284 B.R. 734, 738 (10th Cir. BAP 2002).

[15] *See Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 721 (10th Cir.1993); *Busch v. Hancock (In re Busch),* 369 B.R. 614, 622 (10th Cir. BAP 2007). *See also Lowther v. Lowther (In re Lowther)*, 266 B.R. 753, 756 (10th Cir. BAP 2001).

[16] *Sampson, supra* at 726; *Busch, supra* at 622. *See In re Loper*, 329 B.R. 704, 708 (10th Cir. BAP 2005) (Where debtor and ex-spouse's divorce is by agreement, whether an obligation under that agreement is in the nature of support is resolved by determining the parties shared intent at the time it arose and whether obligation had actual effect of providing support.). I stated in *Bright*: "Because the divorce decree here was entered by the

6

present wherewithal of the parties doesn't matter, nor is the bankruptcy court bound by any labels applied to matrimonial obligations in a state court decree.[17]

The term "support" as used in the Bankruptcy Code is broadly applied.[18] In *In re Goin*, the Tenth Circuit Court of Appeals held that bankruptcy judges must consider whether the non-debtor former spouse needed the payments as support at the time of the divorce case.[19] *Goin* set out four factors that strongly indicate whether the payment was intended as support: (a) the presence of minor children in the home and of an imbalance of incomes between the spouses at the time of the divorce; (b) whether the agreement fails to provide explicitly for spousal support and under the circumstances the spouse needs support; (c) whether the obligation was payable to the spouse direct and in installments over time; and (d) whether the obligation terminated upon the spouse's death or remarriage.[20] In summary, we determine what the shared intentions

---

state court pursuant to the agreement or settlement between Kay and Craig, this Court focuses upon the intent of the parties as approved and memorialized by the divorce decree." 2012 WL 346643 at *3, n. 24.

[17] *In re Busch, supra* at 622 (Bankruptcy court should determine for itself the character of an obligation based upon the facts, not the denomination of the obligation in the divorce decree).; *In re Trump, supra* at 592; *Sampson, supra* at 725-26 (The critical inquiry is the 'function served by the obligation at the time of the divorce.'); *Young v. Young (In re Young)*, 35 F.3d 499, 501 (10th Cir.1994).

[18] *Jones v. Jones (In re Jones),* 9 F.3d 878, 881 (10th Cir. 1993).

[19] 808 F.2d 1391 (10th Cir. 1987) (determining whether debt owed under agreement incorporated in divorce decree was excepted from discharge under § 523(a)(5)).

[20] *Id.* at 1392-93. The evidence in *Goin* established three of the four support factors; only the termination of the obligation upon remarriage or death was lacking and the absence of that factor did not prevent the *Goin* court from finding that the debtor's obligation was support.

7

of the parties and the actual effect of the contested obligation were by applying these factors.[21]

The Rivet children lived in the home with Cynthia Rivet. They were 13 and 17 years old at the time of the divorce in 2011. There was a striking income disparity in the years before the divorce: compare Mr. Rivet's $72,629 in 2008 and $55,564 in 2009 to Cynthia's $6,419 in 2008 and $9,293 in 2009. In 2010, the year the Rivets signed their settlement agreement, Mr. Rivet's income was $61,895. Ms. Rivet's was $9,454.[22] The decree did not require Mr. Rivet to pay receive any spousal maintenance beyond child support although Ms. Rivet appears to have needed additional financial help. Mr. Rivet was to make the second mortgage payments directly to the lender and the termination of his duty to make them was not tied to either Ms. Rivet's remarriage or death. The first *two Goin* factors are present; the latter two are not.[23] But even in those circumstances, the Tenth Circuit Bankruptcy Appellate Panel has held that, in general, an allocation of a debt secured by a lien on the home of the non-debtor and

---

[21] *Sampson,* 997 F.2d at 721; *In re Busch,* 369 B.R. 614, 622-23 (10th Cir. BAP 2007) (Debtor's second mortgage obligation on former marital home was in the nature of support).

[22] Ex. C, D, and E (Mr. Rivet's) and Ex. 2 and 3 (Cynthia's). These differences are much greater than income disparity between the parties in *Bright*. There, the husband's income at the divorce date exceeded his wife's by one-third.

[23] As noted previously, the courts do not view the fact that the obligation is paid to a third party rather than to the spouse fatal to determining the obligation is support. The key inquiry is the nature of the debt, not the identity of the payee. *See* notes 13 and 17, *supra.* The parties' waiver of alimony is more suggestive that the second mortgage debt was support in lieu of a specific alimony award and satisfies factor (b) - the parties' agreement fails to explicitly provide for spousal support. Even if the alimony waiver is unambiguous, the language of the decree is not controlling. *See Goin,* 808 F.2d at 1392; *Sampson,* 997 F.2d at 722-23.

8

dependent children is likely to be support.[24]   Ms. Rivet needed to retain a home for her two minor children. Paying both mortgage loans would have consumed a sizeable chunk of her wages. Also compelling here is Mr. Rivet's being solely liable on the second mortgage loan. The function, purpose, and effect of the Lamar County decree that Mr. Rivet pay the second mortgage was to provide support for Ms. Rivet and the children.

Mr. Rivet's obligation to pay the BOA second mortgage debt is therefore a DSO that is not only excepted from his discharge, but which must be treated and paid as a first priority claim under § 507(a)(1) and § 1322(a)(2). Because the amended plan does not propose that treatment, it cannot be confirmed. Cynthia Knight's objection to confirmation is SUSTAINED and confirmation of the debtor's chapter 13 plan is DENIED. The debtor may amend his plan to provide for the second mortgage obligation consistent with § 1322(a)(2) or convert this case to chapter 7, but any such amendment or motion must be filed within 21 days of the date of this Order. Otherwise, the case will be dismissed.

### 

---

[24] *Busch,* 369 B.R. at 622 (Spouse's need for support at time of divorce is sufficient to presume the parties intended the second mortgage obligation to be support, *citing Sampson,* 997 F.2d at 726, n. 7). See also, *In re Robinson,* 921 F.2d 252 (10th Cir. 1990) (debtor's second mortgage obligation on former marital home assigned to ex-spouse and order to hold ex-spouse harmless was support);*Trump,* 309 B.R. at 594 (Providing shelter for one's family is ordinarily in the nature of support and represents strong indicia that debtor's second mortgage obligation is in the nature of support; function of second mortgage obligation was to allow his ex-spouse and children to remain in the martial residence as their shelter).